```
                    UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF MISSISSIPPI
                          JACKSON DIVISION
```

MEGAN DURR, LARRY COPPER
AND TARGET, INC.                                            PLAINTIFFS


VS.                              CIVIL ACTION NO. 3:07CV455TSL-JCS


MBS CONSTRUCTION CORPORATION                                 DEFENDANT


<u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the court on the motion of defendant MBS Construction Corporation (MBS) for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiffs Meagan Durr and Larry Copper have responded to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion is not well taken and should be denied.

In 2004, Target, Inc. undertook to remodel its store on I-55 North in Jackson, Mississippi. Target, through its Construction Department, hired a general contractor for the project and also hired a fixture installer, MBS. In addition, management at the Jackson store hired a number of employees, including Meagan Durr and Larry Copper, to work on the remodel project. On August 26, 2004, Durr and Copper were removing shoes on one side of a "high wall" which MBS was in the process of deconstructing when the wall fell on them. Durr and Copper recovered workers' compensation

benefits from Target for the injuries they sustained in the incident, and filed this lawsuit against MBS seeking to recover damages in tort for the alleged negligence of MBS in removing the anchor bolts securing the wall while Durr and Copper were still in the process of removing merchandise from the wall.

MBS has moved for summary judgment, arguing that in accordance with the exclusivity provision of the Mississippi Workers' Compensation Act, it is entitled to immunity from plaintiffs' tort suit. See Miss. Code Ann. § 71-3-9 ("The liability of an employer to pay compensation shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next-of-kin, and anyone otherwise entitled to recover damages at common law or otherwise from such employer on account of such injury or death...."). In support of its position, MBS originally proposed that it was plaintiffs' employer at the time of their injuries on the theory that Durr and Copper were either "loaned servants" from Target to MBS or were dual employees of Target and MBS, because they were assisting MBS in the performance of its duties under its contract with Target and were under and/or subject to the direction and control of MBS in the performance of their duties. In a nutshell, the dual servant doctrine recognizes that "[a]n employee may be employed by more than one employer while doing the same work," Biggart v. Texas Eastern Transmission

2

Corp., 235 So. 2d 443 (Miss. 1970), and that where "an employee is engaged in the service of two (2) employers in relation to the same act (dual employment), both employers are exempt from common law liability," Ray v. Babcock & Wilcox Co., Inc., 388 So. 2d 166, 167 (Miss. 1980). "Dual employment occurs when a single employee, under contract with two employers, and under the separate control of each, performs services for the most part for each employer separately, and when the service for each employer is largely unrelated to that for the other." Goolsby Trucking Co., Inc. v. Alexander, 982 So. 2d 1013, 1026 n.8 (Miss. Ct. App. 2008) (quoting Larson's Workers' Compensation Law, § 68.01).

The closely-related borrowed servant doctrine provides that "a servant, in general employment of one person, who is temporarily loaned to another person to do the latter's work, becomes, for the time being, the servant of the borrower, although he remains in the general employment of the lender. The borrower then becomes the employer to the exclusion of the lender." Quick Change Oil and Lube, Inc. v. Rogers, 663 So. 2d 585, 589 (Miss. 1995).

> *Application of the (borrowed servant) rule depends upon the question of whose work is being performed, and if the lender is to escape liability, it must appear that the servant is under the borrower's exclusive control and direction as to the work in progress.* When an employee voluntarily accepts and enters upon such an assignment, he ceases to be in the course of the employment by the lender or the general employer. However, while the "loaned servant" doctrine is

3

> generally considered applicable in the compensation field, a shift of emphasis will be noted as to three pertinent questions involved, viz.: (1) whose work is being performed, (2) who controls or has the right to control the workman as to the work being performed, and (3) has the workman voluntarily accepted the special employment.

Jones v. James Reeves Contractors, Inc., 701 So. 2d 774, 778-79 (Miss. 1997) (quoting Quick Change Oil and Lube, Inc. v. Rogers, 663 So. 2d 585, 589 (Miss. 1995)).

In its motion, as originally framed, MBS maintained that by its terms, the contract MBS entered with Target placed all responsibility for supervision and control of all the remodeling work with MBS, and that under the contract, MBS not only had sole authority with respect to its own employees but that Target ceded to MBS the right to supervise and control all other employees on the project as well, including any employees Target hired to assist with the remodeling work. MBS thus insisted that under the terms of the contract between Target and MBS, it had the right to control all of the work being performed pursuant to the contract, which included the right to control Durr's and Copper's work at the time of their alleged injuries. It urged that, consequently, Target had temporarily loaned Durr and Copper to MBS to assist in the tear-down of the shoe fixture, or alternatively, Durr and Copper were serving both Target and MBS in the performance of this work. MBS argued that, in either event, it was entitled to immunity from the present lawsuit.

4

In response to MBS's motion, plaintiffs insisted that at all relevant times, they were employees solely and exclusively of Target. In support of their position, plaintiffs presented substantial evidence that, irrespective of any provision in the contract, in fact, in the performance of its contract with Target, MBS had no control of, and no right of control of any Target store employees, including Durr and Copper and other Target employees assigned to the remodel project. Instead, Target had the sole and exclusive right to direct, supervise and control its employees. On this point, in addition to the testimony of Durr and Copper themselves that they were directed and controlled in their work solely by their Target supervisor and not by anyone with MBS, plaintiffs presented the testimony of a number of Target superiors/managers who testified unequivocally and emphatically that no contractor for Target has the authority to provide work direction for Target team members. As fully explained by Bill Ford, a Target On-Site Representative, and Thomas Rehkamp, a Target Manager for Fixture Projects, on a remodel project, Target has an on-site representative, who is in charge of the project. The fixture installer hired by Target, here MBS, has a supervisor on site, and Target has its own supervisor, or team leader, for its store personnel, known either as a "remodel specialist" or remodel assistant manager (RAM), or an "executive team leader." Target employees who perform work related to a remodel project are

5

part of the Target "store team" and are under the direction and supervision of their store team leader, who, under the direction of Target's on-site representative, is responsible for coordinating and supervising the work of the store team employees. These witnesses were clear in their testimony that it is not Target's policy or procedure to allow a company such as MBS to have control over Target team members, and instead, the only persons that would have control over Target team members in a Target remodeling project are the Target team leader and his Target superiors.  If the fixture installer wants something done differently by Target's store team members, its supervisor may request that Target's on-site representative redirect their activities; but it is not the fixture installer's prerogative to direct Target's store employees.  In short, the testimony of plaintiffs' witnesses, which does not appear to be challenged by MBS, demonstrates that Target gave Durr and Copper their specific directions, and that MBS did not have the authority to direct the employment-related duties of Copper or Durr.

Plaintiffs also provided testimony from Rehkamp that the work plaintiffs were performing at the time of their injuries was the work of Target, and not the work of MBS.  According to his testimony, while the work under a fixture installation contract may involve handling, removing, storing and reusing shelves for some areas of that store, that does not extend to the

6

merchandisable area of the store.  In the merchandisable area, the demerchandising and removal of shelves is handled by the Target store team–which is to say, Target uses its own employees to handle demerchandising and the shelving in the merchandise areas of the store, which is precisely what Durr and Copper were doing when they were injured.

In light of the evidence that Durr and Copper were performing Target's work at the time they were injured, and that they were doing so under the exclusive direction and control of their Target supervisors, and not of MBS, who had no authority over them, MBS is obviously not entitled to summary judgment on the basis of its assertion that plaintiffs were its borrowed servants or were dual employees of Target and MBS.  Evidently recognizing this, MBS's position has shifted, as evidenced by its rebuttal submission.  No longer does MBS rely on its claimed contractual right to control Target employees as a basis for summary judgment; instead, it now submits that at the time of the injuries to Durr and Copper, MBS and Target were engaged in a "common business enterprise" of remodeling the Jackson Target store fixtures, and that Durr and Copper, along with the MBS employees, were employees of the "common business enterprise," so that both Target and MBS are

7

entitled to tort immunity under the exclusivity provision of the Workers' Compensation Act.[1]

In support of its position on the existence of a common business enterprise, MBS points out that the remodeling of existing stores (along with the construction of new stores) is an integral part of Target's operations, as it is intended to stimulate retail sales (by encouraging guests to shop more often and spend more).  Remodeling, it notes, always involves the handling of store fixtures, which are designed specifically for Target and are unique to Target and are uniformly used throughout all Target's stores.  MBS asserts that a contractor that handles fixtures for Target is a specialized contractor which has to have special knowledge and experience handling Target fixtures, which it acquires through training from Target.  (It notes, too, that for the past approximately twenty years, it has worked exclusively for Target, on remodel projects in Target stores throughout the country.)  According to MBS, in the context of a particular remodeling project, Target directs the details of the work, providing the fixtures, installation instructions and sequencing

---

[1] The court recognizes that MBS did include the phrase "common business enterprise" in its initial memorandum in support of its motion for summary judgment; but that plainly was not the theory on which it grounded its motion.  This is clearly a new theory, raised for the first time in the rebuttal.  In light of this, plaintiffs have reasonably requested the opportunity to submit a surrebuttal, and MBS, to its credit, has not objected to this request.  Accordingly, the court will allow plaintiffs' surrebuttal submission.

8

directions. The actual hands-on work itself, as characterized by MBS, is performed by a "blended team" that includes both MBS, which handles fixtures and shelving, and Target store employees, who handle shelving and merchandise. MBS concludes that from these facts, it is manifest that Target and MBS were engaged in a "common business enterprise" of remodeling the Jackson Target store at the time of the injuries to Durr and Copper, and that Durr and Copper were employees of this common business enterprise. In the court's opinion, the "common business enterprise" theory on which MBS relies has no applicability in this case.

The idea that Mississippi recognizes a common business enterprise theory of tort immunity under the Workers' Compensation Act began with McCluskey v. Thompson, 363 So. 2d 256 (Miss. 1978), where the question was whether workmen's compensation was the exclusive remedy of an employee who suffered a work-related injury as a result of the negligence of a coemployee. "Although an injured party has made a claim against an employer or has accepted workers' compensation benefits, an injured party may bring a negligence action against 'any other party' under Mississippi Code Annotated § 71-3-71 ...."). Powe v. Roy Anderson Const. Co., 910 So. 2d 1197, 1200 (Miss. Ct. App. 2005); See Miss. Code Ann. § 71-3-71 ("An employer or compensation insurer who shall have paid compensation benefits under this chapter for the injury or death of the employee shall have the right to maintain an action

9

at law *against any other party* responsible for such injury or death, in the name of such injured employee or his beneficiaries, or in the name of such employer or insurer, or any or all of them.") (emphasis added). In concluding that a fellow employee is not "any other party," the court considered the purpose of the Workers' Compensation Act:

> The Workmen's Compensation Act was designed to compensate victims of industrial accidents and aid in their rehabilitation and restoration to health and vocational opportunity. Section 71-3-1 Mississippi Code Annotated (1972). The Workmen's Compensation Act represents a wide departure from common law because the Act precludes a common law tort action by an employee against his employer but, in return, assures the employee an award without the necessity of showing fault or negligence on the part of the employer. The legislature has substituted a no-fault compensation system to replace the common law action by employees against employers and thus determined that the cost of this no-fault compensation should be borne by the employing industry. *This brings into play the concept of enterprise liability and logically places the burden of providing compensation for industrial injuries upon the employer*. Compensation for industrial injuries is rightfully placed upon the employer because, (1) industrial injuries are causally related to the fact of employment, and (2) the employer is in a position to pass this cost to society in the form of higher prices.

McCluskey, 363 So. 2d at 259 (emphasis added). The court observed that other courts had identified a similar philosophy in holding that coemployees are entitled to tort immunity, just as their employer, quoting at length from Madison v. Pierce, where the Montana Supreme Court wrote:

> The principle behind this legislation was that the business enterprise or industry should directly bear the

costs of injury to its employees in the same manner as the enterprise has always borne the costs of maintaining and repairing its plant, machinery and equipment. The business enterprise should pass along the costs of maintenance and repair of its human resources, its employees, in the same manner as is done in the case of other production costs, namely in the price at which its product is sold to the public. This underlying purpose finds summary expression in the familiar phrase 'the cost of the product should bear the blood of the workman.'

The foregoing purposes and structure of the Montana Workmen's Compensation Act demonstrate its foundation of enterprise liability for injury to its employees, paid directly by the employer in the first instance and ultimately passed on to the public in the price of its product. To permit an injured employee to collect compensation for injury from his employer under the Act and additionally sue a negligent coemployee of the same enterprise for the same injury, with the employer recouping his compensation payments, destroys the purposes and structure of the entire Act. We do not believe the legislature intended such result.

If section 92-204 were construed to withhold immunity to a coemployee from a negligence action, the cost of injury to an employee of the business would be shifted from the employer, where the Act places it, to a fellow employee, where the Act does not place it. It also would defeat the ultimate payment of injury cost by the public purchasing the product. This result would follow if section 92-204 were interpreted as urged by plaintiff because of the suit rights, subrogation rights, and lien rights granted the employer by this section. We cannot believe the legislature intended to permit the ultimate costs of employee injury to be borne by fellow employees, whether negligent or not. It would be a sad spectacle, indeed, for a workman to find his home taken and his future earnings subjected to payment of a judgment in such a suit; nor did the legislature intend to permit any such action.

*The purposes and provisions of the Act can be fully effectuated by permitting negligence actions, in addition to compensation, only against strangers to the business enterprise.* There is no reason why negligent

11

>     strangers to the business should not pay the cost of
>     injury to employees of the enterprise. The suit rights,
>     subrogation rights, and lien rights granted to the
>     employer under the Act, together with the compensation
>     rights and suit rights granted the employee, permit
>     ultimate collection of injury costs from a negligent
>     stranger to the business enterprise. The Act does not
>     cover strangers, only employees. There is no
>     substitution of rights under the Act for common law
>     remedies as between strangers on the one hand and
>     employers and employees of the business on the other.

McCluskey, 363 So. 2d 260 (quoting Madison v. Pierce, 478 P.2d 860, 862, 863, 864 (Mont. 1970)). See also id. ("We agree that the terms of a statute must be given their common meaning; however, we must recognize that the Workmen's Compensation Act is an entirely new system replacing the fault based system of tort with the no-fault system of enterprise liability.").

McCluskey did not purport to define what constitutes a "business industry" or "business enterprise," but in Morris v. W.E. Blain & Sons, Inc., 511 So. 2d 945 (Miss. 1987), the only other Mississippi Supreme Court case that has touched on the issue, the court undertook to "clarify and limit the exclusive remedy 'umbrella' or the scope of the 'enterprise' to only the prime contractor's employees and immediate employer's employees." Id. at 949. In Morris, the plaintiff's decedent was employed by A&B Paint Striping, a subcontractor of W.E. Blain & Sons. His heirs filed suit against another subcontractor on the job, Traffic Control Products, Inc., claiming that their decedent's death was caused by the negligence of Traffic Control Products. In

12

contending that it was entitled to immunity based on the workers' compensation exclusivity bar, Traffic Control Products contended it was like the co-employee in McCluskey.  After first noting that the decision in McCluskey "rested on the rationale that making a fellow employee liable in tort would defeat the remedial purpose of the Workers' Compensation Act ... because the employer could recoup its compensation payments from the co-employee/tortfeasor, see Miss. Code Ann. § 71-3-71 (1972), thereby shifting the financial responsibility for industrial accidents away from the party best able to distribute the cost as part of his business expense-the employer," id., the court rejected Traffic Control Products' coemployee analogy, stating,

> Only in the broadest possible sense could Traffic Control Products be considered an employee. Traffic Control Products argues that it is what amounts to an employee of the prime contractor, W.E. Blain & Sons, but rather than an employee, Traffic Control Products is an independent contractor that also happens to be a subcontractor.  The term "employee" should not be so contorted.
>
> A different decision does not follow from McCluskey et al.  Traffic Control Products is in a much better position than a mere employee to distribute the cost of potential tort liability within the "enterprise." Traffic Control Products may include in its subcontract bid a price increase which reflects possible tort liability which, in turn, could be passed along by the prime contractor as a cost of the project.  Furthermore, to provide immunity here would be to totally insulate a potential wrongdoer without imposing any obligation. This would tacitly encourage subcontractors to use less than due care.  No public or statutory policy can be argued in support of such a position.

Id.

13

Although MBS generally refers to its having been engaged in a "common business enterprise" with Target, its argument in the case at bar is no different in substance from that of Traffic Control Products in <u>Morris</u>. MBS argues that although its contract with Target provides that it is an "independent contractor," in fact, it was not an independent contractor but rather was Target's servant, as it was never free to do its own work according to its own methods but was instead subject to the control of Target, which dictated what work was to be done and how it was to be done. The court rejects MBS's argument.

To the extent that Mississippi recognizes a "business enterprise" or "enterprise liability" approach to tort immunity,[2] it is clear by virtue of <u>Morris</u> that the scope of the "enterprise" to which the exclusive remedy extends is Target and its employees;[3] and based on the reasoning of <u>Morris</u>, MBS cannot be

---

[2] <u>See</u> John R. Bradley and Linda A. Thompson, <u>Mississippi Workers' Compensation</u> § 11:2 n.6 (Supp. 2009) (noting that in <u>Morris</u>, the Mississippi Supreme Court "rejected enterprise or umbrella tort immunity after having some of its decisions (namely <u>McCluskey</u>) characterized as making such an extension of tort immunity.").

[3] The notion that the "enterprise" includes other companies that are related to the actual "employer," by affiliation or by contract and common purpose, is belied by the Mississippi Supreme Court's opinion in <u>Index Drilling Co. v. Williams</u>, 242 Miss. 775, 137 So. 2d 525, 528 (1962), in which the court held that the related activities of five jointly owned corporations would not warrant disregard of their separate corporate entities for purposes of tort immunity under the Workers' Compensation Act where an employee of one of the corporations (who received workers' compensation benefits from his

14

considered an "employee" of Target, at least not for immunity purposes. As was true with Traffic Control Products in <u>Morris</u>, here, MBS " is in a much better position than a mere employee to distribute the cost of potential tort liability within the 'enterprise'," as MBS "may include in its [contract] bid a price increase which reflects possible tort liability" which would be passed on to Target as a cost of doing business; and, "to provide immunity [to MBS] would be to totally insulate a potential wrongdoer without imposing any obligation." <u>Id</u>.

Based on all of the foregoing, it is ordered that MBS's motion for summary judgment is denied.

SO ORDERED this 10th day of September, 2009.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE

---

direct employer) was injured by the negligence of one of the other corporations, Index Drilling. Since Index Drilling was not his employer, it was not entitled to tort immunity.
      Based on the reasoning of <u>Index Drilling</u>, the court in <u>Porter v. Beloit Corp.</u>, 667 F. Supp. 367 (S.D. Miss. 1987), held that Papco, a subsidiary of International Paper (IP) which did construction work for IP at IP's paper manufacturing plant, was not immune from a wrongful death suit brought by the heirs of an IP employee who was injured as a result of Papco's alleged negligence. The facts did not support piercing the corporate veil and finding the two were the same company, and the court otherwise concluded based on <u>Index Drilling</u> that the Mississippi Supreme Court would hold that an employee of a parent corporation can sue a subsidiary for negligent acts of the subsidiary without bar by the Workers' Compensation Act. <u>Id</u>. at 368. Papco, IP's subsidiary, was as much or more a part of IP's business "enterprise" than MBS was to Target's and yet, it was not extended tort immunity.